## In re SHERMAN.
### Patent Appeal No. 3200.

Court of Customs and Patent Appeals.
Feb. 12, 1934.

Henry G. Dybvig, of Dayton, Ohio (Marston Allen, of Cincinnati, Ohio, of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

The appellant, John Q. Sherman, filed an application in the United States Patent Office for a patent on certain alleged improvements in fan-fold duplicating material. The claims of appellant's application were rejected by the Examiner and, on appeal, by the Board of Appeals.

The following references were cited: Copeland et al., 513,558, January 30, 1894;

Sherman, 1,259,918, March 19, 1918; Cooper, 1,330,786, February 17, 1920; Smith, 1,400,631, December 20, 1921; Sherman, 1,418,481, June 6, 1922; Sherman et al., 1,454,821, May 8, 1923; Murray et al., 1,509,525, September 23, 1924; Johnson, 1,530,269, March 17, 1925; Jones, 1,549,986, August 18, 1925; Johnston, 1,658,127, February 7, 1928.

Claims 7, 8, 10, 12, and 14 were withdrawn at the hearing before the Board of Appeals, and the appeal is dismissed on motion of appellant, in this court, as to claims 13 and 15. Accordingly, the claims which are before us for consideration are numbered 1, 2, 3, 4, 5, 6, 9, 11, 16, 17, and 18. These claims are all article claims, claims 1 and 9 being thought to be typical, and which are as follows:

"As an article of manufacture, a manifolding sheet folded in alternate directions upon itself to parallelism, and having a succession of spaced registering punchings in proximity to its folded margins, for feeding purposes."

"9. In a manifolding means, a paper web having thereon parallel series of printed forms, said web being reversely folded upon itself to form a superposed series of record strips integrally united one to another at their margins, said united superposed record strips being marginally punched at spaced intervals for engagement with a pin wheel feeding device."

Appellant's claimed invention is a web of paper, scored along two longitudinal lines, equally spaced transversely of the web, dividing the web into three portions of equal width. Printed matter appears upon each of these three portions; that on the central portion being printed on one side of the web, and the printed matter on the two other portions being on the opposite side of the web. When in use, the web is folded upon itself, in the manner of a fan, and strips of carbon paper are interposed between the contiguous portions of the web. Rows of pin wheel holes are punched along the longitudinal margins of each portion of the web. In using this material, the web containing the carbons is fed through an autographic register, typewriting, or other record producing, machine, which has pin wheels which, in turn, engage the holes in the web to feed the web forward and maintain all portions of it in proper registry with each other.

The Board of Appeals rejected the claims of the application which are here involved, upon the theory that there was no invention in view of the prior art; that the fan-folded manifolding web was old in the art, being

shown by many of the references; that of Copeland et al. having been issued as early as January 30, 1894. It held, also, that sheets for use in similar machines, which sheets have marginal perforations for engagement with the pins of pin wheels, were fully shown by the references, and were well known to the art for many years. We have examined these references and find this to be true. In fact, there is no dispute between the Patent Office and the appellant in this regard.

However, the point about the matter seems to be this—that the appellant insists that no one, until his present claimed invention, ever conceived the idea of placing marginal perforations for pin wheel use upon a fan-folded paper web for use in autographic register, or similar, machines. The appellant concedes that certain of the reference patents, such as the one to Sherman, of March 19, 1918, show the use of marginal perforations for use with a pin wheel on superimposed, but separate, sheets of paper. However, the appellant insists that the problem involved in the feeding of separate sheets of paper is different than that in feeding a fan-folded web, and that therefore the using of such perforations on a fan-folded web is inventive over such references as that of the said Sherman prior patent. The difference is said to be this, that in the separate sheets the sheets are adjusted so that the perforations are aligned before the sheets are inserted into the machine, and that continuously thereafter, as the machine is operated, the separate sheets are constantly readjusted by the action of the pins in the marginal holes. On the other hand, it is claimed that, with the fan-folded web, the sheets being permanently attached one to the other, there is no preliminary adjustment, and therefore the only function of the pins is to move the web forward, leaving no readjustment to be required in the operation. It is further said that the difficulty in the use of fan-folded webs, as practiced in the old friction type of machine, was the formation of wrinkles and trees, occasioned by the inequality with which the various parts of the web were moved through the machine. The device of the appellant, in this case, it is argued, entirely eliminates any such difficulty, so that the machine will operate successfully, even in remote control typewriters, such as are in common use in telegraphic communication and wire transmission of written messages.

We have considered carefully the suggestions made, but we are unable to conclude that the Board of Appeals has erred in refusing the claims of appellant. We are unable to

discern in what respect the adjustments which would continuously occur in the separate sheets of the early Sherman patent differ in substance from the adjustment which must occur inevitably in the operation of a device using fan-folded webs. While the fan-folded web has marginal attachments which hold it in place, it seems quite obvious that adjustments will be made by the pins as they engage the perforations in the margins of the webs, so that, as the pin wheel turns, the three sheets of the web will be brought into perfect alignment. This is also what happens where loose sheets are used.

We are of opinion that the decision of the Board of Appeals was without error, and it is affirmed.

Affirmed.